OA 91  Criminal Complaint

# United States District Court

__NORTHERN__ DISTRICT OF __CALIFORNIA__

FILED
JUN 2 5 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA
V.
LEOBREDO GARCIA-RODRIGUEZ,
MARIA CHRISTINA RAMIREZ-GARCIA,
JUAN CARLOS SANDOVAL-MACIAS

CRIMINAL COMPLAINT

Case Number: 4-08-70384 WDB

ORIGINAL

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my knowledge and belief. On or about __June 24, 2008__ in __Alameda County__ County, in the __Northern__ District of __California__ defendant(s) did,

(Track Statutory Language of Offense)

knowingly and intentionally conspire to distribute, and possess with intent to distribute, a Schedule II controlled substance, namely, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine,

in violation of Title __21__ United States Code, Section(s) __846, 841(b)(1)(A)(viii)__ .

I further state that I am a(n) __DEA Special Agent__ and that this complaint is based on the following facts:

SEE ATTACHED AFFIDAVIT OF DEA SA BRIAN KEENAN

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Approved As To Form: _____ AUSA GARTH HIRE
AUSA

BRIAN KEENAN
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

June 25, 2008                                      at    San Francisco, California
Date                                                      City and State

HON. NANDOR J. VADAS, U.S. MAG.
Name & Title of Judicial Officer                          Signature of Judicial Officer

1  NORTHERN DISTRICT OF CALIFORNIA      )
                                        ) ss:
2  COUNTY OF SAN FRANCISCO              )

### AFFIDAVIT

I, Brian Keenan, Special Agent of the Drug Enforcement Administration, being duly sworn, hereby declare as follows:

I. **INTRODUCTION**

1. I am a Special Agent (SA) of the United States Department of Justice, Drug Enforcement Administration (DEA) and have been so employed since January of 2005. Prior to being a DEA agent, I was a police officer for the Chicago Police Department, Chicago, Illinois, for approximately 5 years. My current duties and responsibilities involve the investigation of criminal violations of the Controlled Substances Act (Title 21, United States Code) and other duties imposed by law. I am participating in an investigation concerning the trafficking of methamphetamine

2. I am currently assigned to the San Francisco Field Division, Oakland Resident Office Enforcement Group 2. I received formal training at the DEA's Basic Agent Training Academy at the Justice Training Center in Quantico, Virginia, from September of 2005 to January of 2006. This seventeen-week DEA Basic Agent Academy included instruction in, but not limited to, basic narcotic investigations, drug identification, drug detection, familiarization with United States narcotics laws, money laundering techniques and schemes, identification and seizure of drug-related assets, undercover work, and surveillance operations. During my tenure with DEA, I have conducted and assisted in narcotics investigations, which have resulted in the arrests of individuals for violations of federal and state narcotics laws. These investigations have covered illegal substances including methamphetamine. I have also received on-the-job training in advanced investigative techniques from senior DEA Agents. I am currently participating in an investigation concerning the distribution and sale of controlled substances, specifically methamphetamine.

3. This affidavit is being submitted in support of a criminal complaint charging LEOBARDO GARCIA-RODRIGUEZ (GARCIA-RODRIGUEZ), MARIA CHRISTINA RAMIREZ-GARCIA (RAMIREZ-GARCIA), and JUAN CARLOS SANDOVAL-MACIAS (SANDOVAL-MACIAS), with conspiracy to distribute a Schedule II controlled substance, namely 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(viii). I am also requested that warrants be issued for their arrest.

4. The statements contained in this affidavit are based on my personal knowledge, information provided to me by other law enforcement officers, my review of relevant documents and records, as well as my training, experience, and knowledge of this investigation. Because this affidavit is being submitted for the limited purpose of supporting the issuance of a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to support the complaint.

## II. PROBABLE CAUSE

5. On February 10, 2008, an Immigration and Customs Enforcement (ICE) Confidential Source (CS) received a call from an individual known only to the CS as "Pedro," and later identified as GARCIA-RODRIGUEZ. During this telephone conversation, GARCIA-RODRIGUEZ told the CS that GARCIA-RODRIGUEZ is working with new people and wants to provide the CS with samples of methamphetamine and cocaine. The CS and GARCIA-RODRIGUEZ then agreed to speak again at a later time.

6. Between February 10, 2008 and February 12, 2008 there were several recorded telephone conversations between the CS and GARCIA-RODRIGUEZ. During these conversations the CS and GARCIA-RODRIGUEZ discussed a time and place to meet on February 12, 2008, so that GARCIA-RODRIGUEZ could provide the CS with the samples of methamphetamine and cocaine.

7. On February 12, 2008 the CS and GARCIA-RODRIGUEZ met in Redwood City,

2

1  California. This meeting was partially audio recorded. GARCIA-RODRIGUEZ arrived at the
2  meeting driving a 2005 silver Chevrolet Trailblazer with California license plate 6AMP873.
3  During this meeting, GARCIA-RODRIGUEZ and the CS discussed prices of methamphetamine
4  and cocaine, and GARCIA-RODRIGUEZ provided the CS with samples of methamphetamine
5  and cocaine. GARCIA-RODRIGUEZ further told the CS that GARCIA-RODRIGUEZ had a
6  vehicle that contained a hidden compartment. GARCIA-RODRIGUEZ then stated that
7  GARCIA-RODRIGUEZ would be able to fabricate a hidden compartment in a vehicle for the
8  CS, or would be willing to sell the CS a vehicle with a hidden compartment. This meeting then
9  ended. These samples were submitted for chemical analysis to the DEA Laboratory and were
10 determined to be cocaine and methamphetamine.
11     8.     On February 14, 2008, the CS placed a recorded call to GARCIA-RODRIGUEZ.
12 During this call GARCIA-RODRIGUEZ and the CS agreed to meet on February 20, 2008, in
13 order for the CS to see the vehicle with the hidden compartment.
14     9.     On February 20, 2008, the CS and GARCIA-RODRIGUEZ met in Pittsburg,
15 California. Upon arriving at the meeting GARCIA-RODRIGUEZ stated that GARCIA-
16 RODRIGUEZ was unable to bring the vehicle with the hidden compartment because the vehicle
17 was going to be used for a delivery later that evening and the compartment had eight in it. The
18 CS and GARCIA-RODRIGUEZ then discussed prices for kilograms of cocaine and pounds of
19 methamphetamine. This meeting then ended.
20     10.    Following the meeting on February 20, 2008, the CS and GARCIA-RODRIGUEZ
21 were out of contact until late May when the CS and GARCIA-RODRIGUEZ reestablished
22 contact and agreed to meet on June 3, 2008.
23     11.    On June 3, 2008 the CS and GARCIA-RODRIGUEZ met in San Francisco,
24 California. GARCIA-RODRIGUEZ arrived at the meeting driving a 2004 Toyota Solara. The
25 passenger of the Toyota Solara was later identified as RAMIREZ-GARCIA. During this meeting
26 GARCIA-RODRIGUEZ provided the CS with a sample of methamphetamine and cocaine.
27 GARCIA-RODRIGUEZ then showed the CS a hidden compartment located next to the rear
28 passenger side seat. GARCIA-RODRIGUEZ then offered to sell the CS the Toyota Solara for

1  approximately $11,000. RAMIREZ-GARCIA remained present while GARCIA-RODRIGUEZ
2  provided the CS with methamphetamine and cocaine, and while GARCIA-RODRIGUEZ was
3  showing the CS the hidden compartment. From her position in the vehicle RAMIREZ-GARCIA
4  would have been in a position to hear the conversation between the CS and GARCIA-
5  RODRIGUEZ and see the exchange of drugs and the demonstration of the hidden compartment.
6  This meeting then ended. Those samples have been submitted to the DEA Laboratory for
7  chemical analysis and the results are pending.
8      12.   Between June 3, 2008, and June 24, 2008 there were several recorded telephone
9  conversations between the CS and GARCIA-RODRIGUEZ. During these conversations the CS
10 and GARCIA-RODRIGUEZ negotiated for a multiple pound methamphetamine and multiple
11 kilogram cocaine transaction. GARCIA-RODRIGUEZ then agreed to provide the CS with ten
12 pounds of methamphetamine on June 24, 2008.
13     13.   On June 24, 2008, the CS and Oakland Police Officer Leo Sanchez, acting in an
14 undercover capacity (UC Sanchez), arrived at the Home Depot parking lot located at 4000
15 Alameda Avenue, Oakland, California, in anticipation of a meeting with GARCIA-
16 RODRIGUEZ. There were several telephone conversations between the CS and GARCIA-
17 RODRIGUEZ on June 24, 2008, during which the time, location, and quantity of
18 methamphetamine to be delivered to the CS were discussed.
19     14.   GARCIA-RODRIGUEZ then arrived at the Home Depot parking lot driving a
20 Toyota Camry. Seated in the front passenger side seat was RAMIREZ-GARCIA. Upon arriving,
21 GARCIA-RODRIGUEZ apologized to the CS for taking so long to arrive at the deal location.
22 The CS then introduced UC Sanchez to GARCIA-RODRIGUEZ. GARCIA-RODRIGUEZ then
23 told the CS and UC Sanchez that GARCIA-RODRIGUEZ only brought five pounds of
24 methamphetamine. GARCIA-RODRIGUEZ stated that GARCIA-RODRIGUEZ had three
25 pounds of methamphetamine and that the source of supply would only provide GARCIA-
26 RODRIGUEZ with two additional pounds of methamphetamine. GARCIA-RODRIGUEZ then
27 stated that GARCIA-RODRIGUEZ would be able to get the CS an additional five pounds of
28 methamphetamine after GARCIA-RODRIGUEZ received the money from the first five pounds

4

1  of methamphetamine. GARCIA-RODRIGUEZ then stated that if the CS could have waited until
2  tomorrow that GARCIA-RODRIGUEZ would have a couple of kilograms of cocaine. The CS
3  then asked to see the methamphetamine. GARCIA-RODRIGUEZ then pointed at the Toyota
4  Solara with the hidden compartment which was also parked in the Home Depot lot, and indicated
5  it was in the vehicle. GARCIA-RODRIGUEZ then tried to change the location of the meeting,
6  but the CS did not agree to change locations.

7      15.    GARCIA-RODRIGUEZ then placed a telephone call and the Toyota Solara drove
8  to and parked in the area where the CS, UC Sanchez, and GARCIA-RODRIGUEZ were meeting.
9  The driver of the Toyota Solara was later identified as SANDOVAL-MACIAS. PO Sanchez
10 then asked SANDOVAL-MACIAS to show UC Sanchez the methamphetamine. SANDOVAL-
11 MACIAS then opened the hidden compartment and removed two plastic wrapped plastic bags
12 containing methamphetamine from the hidden compartment. UC Sanchez then asked to see the
13 other three and UC Sanchez then looked into the hidden compartment and was able to observe
14 three additional plastic wrapped plastic bags each containing methamphetamine. UC Sanchez
15 then gave an arrest signal and GARCIA-RODRIGUEZ, SANDOVAL-MACIAS, and
16 RAMIREZ-GARCIA were placed in custody.

17     16.    A search of the Toyota Solara revealed the hidden compartment containing five
18 plastic wrapped plastic bags each containing methamphetamine. A search of the Toyota Camry
19 revealed a plastic bag containing approximately one ounce of cocaine and a small amount of
20 methamphetamine from within the front passenger door speaker well. Also found on the front
21 passenger seat where RAMIREZ-GARCIA was sitting at the time of arrest was a brown purse
22 that a trained drug detection K-9 alerted to for the scent of narcotics. A search of the purse
23 revealed approximately $12,328 in cash and women's cosmetics.

24     17.    On June 25, 2008, I field tested the each one of the five packages of suspected
25 methamphetamine seized the day before and each one of them tested positive for
26 methamphetamine. In total, approximately five pounds (2,268 grams) of methamphetamine were
27 seized.

### III. CONCLUSION

18. For the reasons stated above, I submit that there is probable cause to believe that LEOBARDO GARCIA-RODRIGUEZ (GARCIA-RODRIGUEZ), MARIA CHRISTINA RAMIREZ-GARCIA (RAMIREZ-GARCIA), and JUAN CARLOS SANDOVAL-MACIAS (SANDOVAL-MACIAS), conspired to distribute, and to possess with intent to distribute, a Schedule II controlled substance, namely 500 grams or more a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(viii). I also respectfully request that warrants be issued for their arrest.

_____
Brian Keenan
Special Agent, Drug Enforcement Administration

Sworn to before me this
25th day of June

_____
HONORABLE NANDOR J. VADAS
UNITED STATES MAGISTRATE JUDGE

6